Fremont-Smith, J.
Defendant John Leary is charged with trafficking in cocaine in an amount over two hundred grams, M.G.L.c. 94C, §32E(b)(4), conspiracy to traffick in cocaine, M.G.L.c. 94C, §40, and operating a motor vehicle after suspension of driver’s license, M.G.L.c. 90, §23. Defendant Launa Cavanaugh is charged with conspiracy to traffick in cocaine, M.G.L.c. 94C, §40. Defendants have filed motions to suppress evidence seized pursuant to two searches conducted by the Reading Police on March 17, 1997. Defendants contend that evidence seized from the first search should be suppressed because it resulted from an illegal inventory search and that evidence seized in the second search should be suppressed as fruit of the poisonous tree. For all the reasons stated herein, the defendants’ motions to suppress are denied.
DISCUSSION
After hearing, and based on the credible evidence, the Court finds the following facts: At approximately 6:30 a.m. on March 17, 1997, Officer Holmes (Holmes) of the Reading Police Department stopped an automobile for driving in excess of the speed limit. The driver pulled into a commercial parking lot. The car was being driven by defendant Leary, but it was owned and registered to defendant Cavanaugh, who was not present. Holmes checked the status of Leary’s license and found that Leary’s license to operate a motor vehicle was suspended. Holmes issued Leary citations for speeding and for operating after suspension, told Leary that the car would have to be impounded and told him the identity of the tow company from which the car could be retrieved. Holmes allowed Leary to remove his personal belongings from the back seat and to leave on foot. Holmes then arranged for the car to be towed. Prior to the car being towed, Holmes conducted an inventory search of the vehicle. Under the front driver’s seat, in a paper bag, Holmes found 650 grams of a substance that appeared to be cocaine. Based on the discovery of the narcotics under the seat, the police applied for and were issued a warrant to search the vehicle. Later in the day, the vehicle was searched again pursuant to the warrant and an additional twenty grams of cocaine were discovered in a glove under the passenger seat.
Warrantless searches are per se unreasonable unless they fall within one of the exceptions to the warrant requirement. Katz v. United States, 398 U.S. 346, 357 (1967); Commonwealth v. Forde, 367 Mass. 798, 800 (1975). Where a warrantless search has been conducted, the Commonwealth must demonstrate that the search falls within the narrow class of permissive exceptions. Commonwealth v. Phillips, 413 Mass. 50, 55 (1992).
An inventory search of a vehicle may be conducted without a warrant, pursuant to a standardized police policy, if the vehicle has been lawfully impounded. Colorado v. Bertine, 479 U.S. 367 (1987); Commonwealth v. Matchett, 386 Mass. 492, 509-11 (1982). “Impoundment of a vehicle for noninvestigatory reasons is generally justified if supported by public safety concerns or by danger of theft or vandalism to a vehicle left unattended.” Commonwealth v. Daley, 423 Mass. 747, 750 (1996), citing Commonwealth v. Dunn, 34 Mass.App.Ct. 702, 703 (1993). Whether impoundment of a vehicle was justified “is the threshold issue in determining the lawfulness of the inventory search.” Commonwealth v. Garcia, 409 Mass. 675, 678 (1991).
In the present case, this Court finds that the impoundment of the vehicle driven by Leary was justified because Leary was not licensed to drive and he did not have permission to park in the commercial parking lot where he stopped the vehicle. See Commonwealth v. Dunn, supra at 706 (impoundment was proper where *72 the police officer wanted to spare the owner of the commercial parking lot the “burden of dealing with the vehicle’s presence” and the officer was concerned about exposing the vehicle to theft); Commonwealth v. Daley, supra at 750 (there was no reasonable alternative to impoundment where the car was parked on a busy street, unregistered and uninsured).
The Supreme Court has stated “that inventory procedures serve to protect an owner’s property against claims of lost, stolen, or vandalized property, and to guard the police from danger.” Colorado v. Bertine, supra at 372. See Commonwealth v. Alvarado, 420 Mass. 542, 553 (1995) (inventory searches are for the purpose of protecting property within the vehicle).
In Massachusetts, the Supreme Judicial Court has held that, “under article 14 [of the Declaration of Rights], inventory searches of automobiles must be conducted pursuant to standard police procedures, and that those procedures must be in writing.” Commonwealth v. Alvarado, supra at 553, citing Commonwealth v. Bishop, 402 Mass. 449, 451 (1988). The defendants here argue that the inventory search was not conducted in accordance with the Reading Police Department policy regarding such searches. The Reading Police Department policy on motorvehicle inventory searches provides, inter alia, that if the operator of a vehicle is arrested, the officer must advise him that the car will be inventoried by the police and that if the owner of the vehicle is not present, the vehicle should not be inventoried at the scene of the arrest or the place of seizure.[2] Defendants contend that Holmes’ failure to advise Leary that the vehicle would be inventoried by the police and his execution of the search at the scene of the impoundment are violations of Reading’s inventory policy, so that the evidence seized as a result of the inventory search must be suppressed.
The fact that Holmes conducted the search at the scene of the impoundment rather than the impoundment destination is viewed by this Court as a de minimis violation of the policy. The provision is intended to protect the police from claims of misappropriation, and it is therefore, of no consequence to the driver that the search was conducted immediately at the scene of impoundment instead of later at the destination of the impoundment. See Commonwealth v. Garcia, 409 Mass. 675, 685 (1991) (failure of police officer to secure the signature of a tow truck operator on an inventory form listing the contents of an impounded vehicle, as required by police procedures, did not effect the legality of the officer’s seizure of cocaine resulting from an inventory search, as the deficiency did not affect the driver’s constitutional rights). Moreover, here the impoundment of the vehicle was justified and the contraband would have been inevitably discovered, in any event, even had the vehicle not been searched until after it was towed. See Commonwealth v. Sbordone, 424 Mass. 802, 811 (1997) (participation of an unsupervised civilian in the execution of a search warrant constituted only an incremental intrusion on the defendant’s privacy and not so severe a violation as to defeat inevitable discovery).
With respect to the other asserted policy violation, i.e. the officer’s not having informed Leary that the vehicle would be inventoried, the •written impoundment policy requires only that an arrested operator be advised that the vehicle would be inventoried (para. B. 1.), and further provides that if an unarrested operator “is incapacitated or unable to prove ownership, there is no need to advise him of his option to find an alternative disposition for the vehicle,” (para. B. 3.). Where, as here, the operator was not the owner, was not arrested, and was permitted to remove any personal possessions that he wished from the car, this Court finds that the inventory policy did not require that the operator be told that the vehicle would be inventoried, and that the inventory policy was not violated.[3]
ORDER
For each of the above reasons, the defendants’ motions to suppress are DENIED.

The relevant portions of the policy read as follows:
A. POLICY: MOTORVEHICLE INVENTORY
It is the policy of the Reading Police Department that an inventory of valuables be conducted on all vehicles brought into police custody, unless the owner has provided an alternative way of securing or disposing of the vehicle that is reasonable under the circumstances.
B. PROCEDURE
1. If an operator of a vehicle is arrested, the officer must advise him that his vehicle will be taken to a police facility or private storage facility for safekeeping and an inventory of its contents conducted unless the operator directs the officer to dispose of the vehicle in some other reasonable and lawful manner....
3. If the operator is incapacitated or unable to prove ownership, there is no need to advise him of his option to find an alternative disposition for the vehicle . . .
5. If the owner or operator of the vehicle fails to direct the officer to dispose of the vehicle in a reasonable manner or to leave it at the scene, or if a vehicle is brought into police custody without any contact with the owner, the vehicle is to be taken into police custody and brought to the location where vehicles in police custody are usually kept for safekeeping and inventoried. The vehicle should not be inventoried at the scene of the arrest or place of seizure

Defendants further argue that the inventory policy was unconstitutionally vague because it did not explicitly cover the situation here presented. For an inventory policy to anticipate every possible combination of circumstances would be impossible, and the Court concludes that the policy here was sufficiently detailed to ensure that the “search itself’ would be “routine” so as not to constitute an investigatory search, which is all that is constitutionally required. See Commonwealth v. Caceres, 413 Mass. 749, 751-52 (1992) (constitutional requirement that there be no police discretion in conducting an inventory search is applicable only to “the inventory searches themselves,” and not to the informational requirements of the inventory policy).

John J. Leary, Criminal Action numbers 97-1056-001, 002 and 003, and Launa Cavanaugh, Criminal Action number 97-1057-001, have filed a joint memorandum of law in support of their respective motions to suppress evidence,