NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-1015                                        Appeals Court


COMMONWEALTH  vs.  JAHLIEL M. NICOLEAU.


No. 15-P-1015.

Suffolk.     May 16, 2016. - October 14, 2016.

Present:  Agnes, Massing, & Kinder, JJ.


Constitutional Law, Search and seizure.  Search and Seizure,
    Inventory.  Practice, Criminal, Motion to suppress.



Complaint received and sworn to in the Dorchester Division
of the Boston Municipal Court Department on September 5, 2014.

A pretrial motion to suppress evidence was heard by
Catherine K. Byrne, J.

An application for leave to prosecute an interlocutory
appeal was heard by Fernande R.V. Duffly, J., in the Supreme
Judicial Court for the county of Suffolk, and the appeal was
reported by her to the Appeals Court.


Michael A. Lafleur, Assistant District Attorney, for the
Commonwealth.
John M. Corridan for the defendant.


AGNES, J.  The question presented in this case is whether

it was reasonable for police to seize and inventory the contents

of a backpack found in the back seat of a vehicle operated by

the defendant, Jahliel M. Nicoleau, upon his arrest. The vehicle was parked in front of his home where he lived with his grandmother, who was present at the scene, and to whom the police gave other personal belongings of the defendant. Based on the reasoning in Commonwealth v. Abdallah, 475 Mass. 47, 52-53 (2016), we conclude that although the police had a right to impound and tow the unregistered, uninsured vehicle that the defendant was operating, there was a practical, available alternative to the seizure of the defendant's backpack -- namely, turning it over to the defendant's grandmother -- which would have precluded the police from seizing it and subjecting it to an inventory search. Accordingly, we affirm the order allowing the defendant's motion to suppress a knife that the police found inside the backpack.

Background. On review of "a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error 'but conduct an independent review of [her] ultimate findings and conclusions of law.'" Commonwealth v. Scott, 440 Mass. 642, 646 (2004), quoting from Commonwealth v. Jimenez, 438 Mass. 213, 218 (2002). We recite the facts as found by the motion judge, supplemented with uncontested testimony from the hearing on the motion to suppress.

On September 4, 2014, Officer Brian Tracey and his partner were patrolling in Boston and observed a car, driven by the

defendant, with one headlight out. The vehicle's registration and license plates were invalid. The officers followed the car and attempted to stop it, but the defendant continued to drive until he parked the car outside his home, where he lived with his grandmother. Other officers arrived, and the grandmother emerged from the home to speak with the police. The defendant was placed under arrest for failure to stop and for motor vehicle violations. Because the vehicle was unregistered and uninsured, and the defendant was unable to produce a driver's license, the officers arranged to have it impounded.

Having made the decision to impound the vehicle, but prior to the car being towed, officers searched the vehicle, removing a music player from the backseat and giving it to the grandmother. They handed the defendant's keys to the grandmother as well.[1] The police also removed a backpack from the back seat, but instead of handing it to the grandmother, they opened it and located a knife inside. The defendant was additionally charged with unlawfully carrying a dangerous weapon in violation of G. L. c. 269, § 10(b).

---

[1] It appears that the grandmother was willing to and interested in taking possession of the defendant's other belongings. Although the defendant specifically asked the police whether his grandmother could take the stereo, he did not object to her taking any other items.

The defendant moved to suppress the knife, and Officer Tracey testified at the motion hearing. Although Tracey admitted that the officers removed a music player from the car, the inventory search form that was completed indicated that nothing had been removed from the vehicle. The motion judge ruled that the stop, impoundment, and inventory search were lawful. However, she concluded that the inventory search should not have extended to the interior of the backpack, because the grandmother was present and willing to take possession of the defendant's property, and in fact did so in the case of the music player. Therefore, the judge reasoned, it appeared that the search was for evidence of another crime, and the police did not follow their own inventory policy.

Discussion. An inventory search is lawful under the United States Constitution and art. 14 of the Massachusetts Constitution only if (1) the impoundment of the vehicle was reasonable, and (2) the search of the vehicle following impoundment was "conducted in accord with standard police written procedures." Commonwealth v. Oliveira, 474 Mass. 10, 13 (2016). See Commonwealth v. Ellerbe, 430 Mass. 769, 776 (2000); Commonwealth v. Brinson, 440 Mass. 609, 612 (2003).

Impoundment of a vehicle on a public way is justified by at least four distinct needs: protection of the owner's property from vandalism or theft while the vehicle remains in police

custody, see Ellerbe, supra at 775-776; where a vehicle, if left unattended, poses a public safety risk, see Brinson, supra; where the vehicle stopped did not possess valid registration plates, see Commonwealth v. Horton, 63 Mass. App. Ct. 571, 573, 577 (2005); and protection of police and the public from potentially dangerous items in the vehicle, see United States v. Coccia, 446 F.3d 233, 240 (1st Cir. 2006), cert. denied, 549 U.S. 1149 (2007).  See Oliveira, supra at 13; South Dakota v. Opperman, 428 U.S. 364, 369 (1976).  "The propriety of the impoundment of the vehicle is a threshold issue in determining the lawfulness of [an] inventory search."  Commonwealth v. Eddington, 459 Mass. 102, 108 (2011), quoting from Commonwealth v. Garcia, 409 Mass. 675, 678 (1991).

In this case, the defendant does not argue that the police lacked authority to seize and impound the automobile.  Indeed, impoundment for noninvestigatory purposes is justified "if supported by public safety concerns or by the danger of theft or vandalism [if] left unattended."  Commonwealth v. Daley, 423 Mass. 747, 750 (1996).  See Commonwealth v. Caceres, 413 Mass. 749, 751 (1992) (where no person is authorized to operate motor vehicle, police had no alternative but to seize vehicle and conduct inventory search).  Here, the defendant could not produce a driver's license, and the vehicle was unregistered and

uninsured.  The vehicle could not be left on a public roadway.
See Commonwealth v. Figueroa, 412 Mass. 745, 748 n.4 (1992).

Nevertheless, "[i]mpoundment of a car and an inventory
search of a car are not synonymous, and the constitutional
analysis is not unilateral."  Commonwealth v. Silva, 61 Mass.
App. Ct. 28, 33 (2004).  The lawfulness of an inventory search
subsequent to impoundment implicates distinct standards from
those governing the lawfulness of impoundment itself.  See
Commonwealth v. Goncalves, 62 Mass. App. Ct. 153, 156 (2004).
The sole issue in our case, then, is whether the scope of the
lawful inventory search properly included the backpack's
interior.  We begin with a review of the purpose underlying the
inventory search exception to the warrant requirement.

An inventory search is justified exclusively by a necessity
that is independent of any suspicion of criminal activity.  It
may be considered necessary "for the purpose of protecting the
car or its contents, for the purpose of protecting the police
against unfounded charges of misappropriation of such property,
for the purpose of protecting the public against the possibility
that the car might contain weapons or other dangerous
instrumentalities which might fall into the hands of vandals, or
for a combination of such reasons."  Commonwealth v. Matchett,
386 Mass. 492, 510 (1982).  The target of the inventory search
is the contents of the vehicle at the time it is to be towed.

See Commonwealth v. Alvarado, 420 Mass. 542, 553 (1995) ("Inventory searches are intended to be noninvestigatory and are for the purpose of protecting property which may be within the vehicle"). Indeed, there is no need to safeguard property or protect the police against false claims of misappropriation where the police will not take possession of the property in question. See Commonwealth v. Vanya V., 75 Mass. App. Ct. 370, 379 (2009), quoting from Commonwealth v. Muckle, 61 Mass. App. Ct. 678, 682-683 (2004) ("safeguarding the [item taken by law enforcement]" is subject to inventory search as opposed to gathering evidence or investigation). See also Commonwealth v. Tisserand, 5 Mass. App. Ct. 383, 386 (1977) (inventory of "the contents of a car about to be towed or impounded is a reasonable procedure").

This case requires us to determine whether the police have discretion to decide which items of personal property contained in the vehicle of an arrested party will remain with the vehicle when it is towed, and which will be turned over to an appropriate third party who is present, able, and willing to take possession of the property. This case is unlike the more common scenario in which the driver is under arrest and no one is available to take possession of any of the vehicle's contents, which must, out of necessity, be inventoried before the vehicle is impounded. See, e.g., Commonwealth v. Ford, 394

Mass. 421 (1985) (lone driver under arrest); Commonwealth v. Bishop, 402 Mass. 449 (1988) (lone driver arrested); Garcia, 409 Mass. at 675 (passenger and driver both under arrest); Alvarado, supra (both occupants of vehicle placed under arrest prior to inventory search); Muckle, supra (driver and passenger both under arrest). The seizure of an item that is not itself suspected to be dangerous, in circumstances where there is a responsible third party available to take possession of it, is inconsistent with the purposes underlying an inventory search. See Opperman, 428 U.S. at 369; Garcia, supra at 682. In a case such as this, there is simply no need to seize or safeguard items that are not instrumentalities of a crime or contraband, or where there is no suspicion that they may be a danger to the public.

The Supreme Judicial Court's recent decision in Abdallah, 475 Mass. at 51, reinforces the point that an inventory search is valid only when it is necessary and carried out in compliance with written police procedures. Although it did not involve the contents of a vehicle, Abdallah concerned the propriety of an inventory search of the defendant's backpack, which was seized upon his arrest and searched during the subsequent booking process. The court rested its rationale on the fact that it was not necessary to conduct an inventory search of the backpack's interior because there was a reasonable practical alternative to

seizing the backpack.[2]  See id. at 51-53.  Abdallah, then,
requires an inquiry into whether the officers in this case had a
reasonable practical alternative to seizing the backpack and
conducting an inventory search of its interior.  See id. at 52-
53.  "This inquiry is fact driven, with the overriding concern
being the guiding touchstone of [r]easonableness."  Id. at 52,
quoting from Eddington, 459 Mass. at 108.  For substantially the
same reasons as the court in Abdallah, we conclude that the
officers did not take advantage of a reasonable, practical
alternative.

In Abdallah, the defendant was arrested at his hotel room,
and the officers informed him that he would be able to pick up
his belongings, which had been inside the room, from the hotel's
front desk after he was released.  See id. at 49.  When Abdallah
asked the officers to secure certain more valuable items (his
computer and video game system), they did so.  See ibid.
However, the police chose one of Abdallah's belongings, a

---

[2] Applied in the context of motor vehicles, Abdallah stands
for the proposition that the reasonable inquiry must be
undertaken at two distinct points in time:  first, in deciding
whether the car must be impounded; and second, in deciding
whether certain property must, out of necessity, be inventoried
prior to the vehicle being towed.  Abdallah instructs that after
the initial determination is made, the defendant should be asked
his preference as to the disposition of his property.  If there
is a practical and available alternative that the defendant
expressly or impliedly approves, the police must choose it.
Otherwise, they may proceed with an inventory search.  See id.
at 52-53.

backpack, which had been on his person, to take into custody along with the defendant as he was booked at the police station. As part of standard booking procedures, the bag's contents were inventoried, and discovered to contain controlled substances and a great deal of cash.  Ibid.

The Supreme Judicial Court affirmed the allowance of a motion to suppress the contents of the backpack, first concluding that there was no reason to believe that the bag posed any danger to public safety.  Id. at 52.  Then, the court analyzed whether it was reasonable for the police to seize the backpack, concluding that in the totality of the circumstances, where the officers had arranged with the hotel clerk to safeguard certain of Abdallah's belongings, as well as his vehicle, it was unreasonable for them to "single out" the backpack and subject it alone to an inventory search at the station.  Id. at 53.

In the present case, as in Abdallah, there was no evidence prior to the search that the defendant's backpack or its contents presented a danger to anyone or contained evidence of a crime.  A third party, the defendant's grandmother, was present and willing to take possession of the defendant's belongings. The police did, in fact, arrange for her to do so in the case of the music player.  Having made the decision to give the music player to the defendant's grandmother, the police did not have

the discretion to decide to seize and inventory the defendant's backpack, which also could have been turned over to the grandmother.[3]  Therefore, we affirm the motion judge's allowance of the defendant's motion to suppress.[4]

So ordered.

---

[3] The Commonwealth contends that opening the backpack to inventory its contents, under circumstances where the vehicle was to be impounded and towed, was expressly required by the plain language of the police department's inventory search policy.  Indeed, if the backpack were to remain in the vehicle after it was towed, the policy would dictate such a result; officers do not have discretion to determine the scope of an inventory search, once commenced.  See Opperman, 428 U.S. at 377 (Powell, J., concurring).  See also Commonwealth v. Rostad, 410 Mass. 618, 622 (1991).  Here, however, contents of the vehicle removed prior to towing had no need to be inventoried, as the purpose of an inventory search was not implicated by items that would not remain inside the vehicle.  The purpose of an inventory search is to protect property and to guard against false claims against the police regarding items stored in a vehicle when it is impounded and towed.  See Caceres, 413 Mass. at 754.  No such need arises where an item may be removed and handed over to a responsible third party.

[4] In view of the result we reach, it is unnecessary to consider whether the police complied strictly with their own policy, which required them to ask the owner of property in a vehicle to be towed for his preference as to its disposition.  The only evidence presented at the hearing was that the defendant specifically requested that the grandmother take possession of the stereo.  The motion judge made no findings in this regard.  Neither did he make a finding that the seizure and search of the defendant's backpack was a pretext for an investigatory search, and therefore, we have no occasion to address that issue.